IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| ADRAIN SHELTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 309-048 |
| ) | |
| FRED BURNETTE, et al., ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Ware State Prison in Waycross, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.[2]

---

[1] At the time of the events forming the basis of the complaint, Plaintiff was incarcerated at Telfair State Prison and Smith State Prison.

[2] Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he has no means by which to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

# I. SCREENING THE COMPLAINT

*Liberally* construing Plaintiff's complaint, the Court finds the following. Plaintiff names the following Defendants: (1) Brian Owens, the Commissioner of the Georgia Department of Corrections; (2) Fred Burnette, Warden of Telfair State Prison ("TSP"); (3) Mrs. Winter, Chief Counselor at TSP; (4) Tim Spires, Deputy Warden at TSP; and (5) Ms. Henrey, Chief Counselor at Smith State Prison ("SSP"). (Doc. no. 1, pp. 1, 4).

According to Plaintiff, on February 6, 2009, he and inmate Jimmy Soloman ("Soloman") were taken to Defendant Burnette's Office. (Id. at 5). While there, according to Plaintiff, Defendant Burnette questioned Soloman about why he had written a letter to his mother alleging that he had been beaten by an officer at TSP. (Id.). Plaintiff also alleges that Defendant Burnette then questioned him about why he had written to Soloman's mother also alleging that Soloman had been beaten by an officer at TSP. (Id.). Plaintiff stated that he did so because "it was true;" he had heard an officer beating Soloman on the walk-way in front of his window. (Id.). Plaintiff alleges that after he made this statement, Defendant Burnette directed the officers to leave and to take Soloman with them. (Id.). Plaintiff maintains that once everyone had left Defendant Burnette's office, Defendant Burnette made some comments to Plaintiff while taking a walking cane and "push[ing] it into [Plaintiff's genitals] twice slow[ly] and very hard." (Id.). At that point, Plaintiff "ran" out of Defendant Burnette's office to where the officers were waiting; he states he had tears in his eyes, was scared, and was in shock. (Id.).

Plaintiff provides that the next morning, he told Mrs. Wilcox, a counselor at TSP, about the incident and asked for a "grievance." (Id.). According to Plaintiff, he was

provided the grievance form ten (10) days later. (Id.). On the date that he returned the completed form to Mrs. Wilcox, February 16, 2009, the CERT-Team went to his cell and informed Plaintiff that Defendant Burnette wanted to see him. (Id.). Plaintiff maintains that when he replied that he was scared, the CERT-Team left. (Id.). However, approximately five (5) minutes later, the CERT-Team returned, opened the "flap," and sprayed mace through the flap. (Id.). Plaintiff alleges that the mace affected his eyes. (Id.). The CERT-Team also stated that Plaintiff was lying. (Id.).

Approximately fifteen (15) minutes later, the CERT-Team again returned, this time to handcuff Plaintiff. (Id.). Plaintiff maintains that he put his hands through the flap to be handcuffed; however, as he put his hands through the flap, Sergeant Hart "snatched" Plaintiff's arms and the top of the flap struck Plaintiff's lower back causing a "sharp pain." (Id. at 5-6). Plaintiff states that he asked Sergeant Hart why he was being taken from his cell because he did not have a "call out," he also requested medical attention. (Id. at 6). Sergeant Hart allegedly responded by telling Plaintiff to ask Defendant Burnette why he was being taken from his cell, and he refused to get medical help for Plaintiff. Next, Plaintiff maintains that the CERT-Team forced him to walk to the "front" wearing nothing more than boxers. (Id.). Although not clearly stated, Plaintiff apparently had a disciplinary proceeding for one of the above incidents; he was found guilty for failure to follow directions. (Id.).

On February 17, 2009, Plaintiff claims he asked Nurse Mathis and Nurse Williamson ("Williamson") to "please help [Plaintiff] get medical help [because Plaintiff] had been sexually assaulted by [Defendant Burnette] and sprayed with mace for saying something and [his arms had been] reckless[ly] snatched from his cell by the CERT-Team." (Id.). Plaintiff

3

alleges that, at that time, he was in tremendous pain and that his vision was blurred. (Id.). Plaintiff filled out a sick call slip pursuant to Williamson's advice to do so. However, when he did not receive any medical treatment by any personnel in health services, he requested an officer at TSP to call Defendant Winter the Chief Counselor at TSP, and explain Plaintiff's circumstances to her. (Id.). According to Plaintiff, the officer did as Plaintiff requested, and that evening Defendant Winter spoke to Soloman about a purported sexual assault complaint that he had filed against Sergeant Hart and then spoke to Plaintiff about his situation. (Id.).

Additionally, Plaintiff maintains that he told Defendant Winter that he was in pain, was having nightmares, and wanted to talk to someone in internal affairs. (Id.). Plaintiff states that Defendant Winter, at the end of their conversation, provided Plaintiff with a witness statement form and instructed Plaintiff to write down his statement of the incidents about which he had complained. (Id.). Defendant Winter then directed Plaintiff to give the form to an officer – once he had completed the statement – who would then return it to Defendant Winter. (Id.). Additionally, Plaintiff claims to have "told" Defendant Spires and numerous others, either about the purported sexual assault, mace, and/or handcuffing incident, or that he was in pain and having nightmares, but they never reported "it."[3] (Id.).

Plaintiff indicates that one week after the incidents, as a result of the disciplinary report, his security classification was raised from medium to close level. (Id.). He maintains that he was then transferred from TSP to SSP. Once at SSP, Plaintiff saw a counselor to whom he explained that while at TSP, he had been sexually assaulted by Defendant Burnette

---

[3]Plaintiff does not clearly state what he told Defendant Spires.

4

and that "they" sent Plaintiff to SSP to keep him quite. (Id. at 7). Plaintiff then claims that this counselor informed him that the disciplinary report had been "dropped," and she then directed Plaintiff to go to the office of Defendant Henrey, the Chief Counselor at SSP. (Id.).

Next, Plaintiff insinuates that Defendant Henrey, after checking Plaintiff's status in the computer, agreed with Plaintiff's allegations and purportedly told him that she would contact internal affairs for Plaintiff. (Id.). Plaintiff states that he has not been contacted by internal affairs. (Id.). He also claims that he is in protective custody because inmates coming from various prisons within the Georgia Department of Correction claim he has a price on his head. (Id.). Plaintiff requests fifty million dollars in damages.[4] (Id. at 8).

## II. DISCUSSION

### A. Claims Against Defendants Winter, Henrey, Spires, and Owens

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that his complaint fails to state a claim for relief against Defendants Winter, Henrey, Spires, and Owens. That is, while Plaintiff names these Defendants in the caption, he does not assert any allegations of wrong doing regarding these Defendants in his statement of claims. In fact, Plaintiff does not mention Defendant Owens anywhere in his statement of claims.

"Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit recently held that a district court properly dismisses

---

[4]Plaintiff does not make any allegations against Defendant Owens.

5

defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1222-23 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")).

Here, Plaintiff does not allege any facts of wrong doing against Defendants Winter and Henrey. Rather, he explains that Defendant Winter came to his cell, heard his side of the events that had occurred, and provided him with a witness statement form. (Doc. no. 1, p. 6). Similarly, after hearing Plaintiff's statement, Defendant Henrey allegedly told Plaintiff that she would contact Internal Affairs for Plaintiff. (Id. at 7). Plaintiff's claim against these Defendants appears to be the fact that Internal Affairs never investigated Plaintiff's allegations. However, Plaintiff explains that both of these Defendants provided him with the requisite forms and appropriately addressed his complaints. That Internal Affairs chose not to interview Plaintiff about his complaints cannot be attributed to Defendants Winters and Henrey.

Additionally, concerning Defendant Spires, Plaintiff only in conclusory fashion claims that he purportedly mentioned one of his problems to Defendant Spires. However, Plaintiff never mentions which problem he purportedly mentioned to Defendant Spire, he never states that he asked Defendant Spires for help, nor does he state that Defendant Sprires did something wrong. (Id.). As such, Plaintiff has not made any allegations of wrongdoing against Defendant Spires. Vague and conclusory allegations are not sufficient to state a

claim. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (noting that vague and conclusory accusations are insufficient to state a civil rights claim).

Thus, in none of the above-mentioned claims does Plaintiff explain how these Defendants' alleged wrongdoing contributed to any of Plaintiff's claims. Thus, in the absence of an allegation of any connection between any actions of Defendants Winter Henrey, Spires, and Owens with any alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against these Defendants. Thus, Defendants Winter, Henrey, Spires, and Owens should be dismissed.

### B.    No Respondeat Superior

To the extent that Plaintiff may be trying to blame Defendant Owens for the acts of his subordinates regarding the alleged sexual assault, and the mace and handcuffing incidents, his claims fail. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the

supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted above, Plaintiff has not alleged any facts against Defendant Owens, let alone that he actually participated in any purported constitutional violation.

Similarly, Plaintiff fails to allege a "causal connection" between the above-named Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[5] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has proffered no allegations to suggest that Defendant Owens knew about any widespread abuse or that he was responsible for a custom or policy which resulted in ignoring Plaintiff's rights. In sum, Plaintiff has failed to state a claim upon

---

[5]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

8

which relief may be granted against Defendant Owens.

**C.     Alleged Mace and Handcuffing Incidents**

Although Plaintiff describes the mace and handcuffing incidents, and alleges that these incidents caused him pain, he has not named as a defendant any individual who was involved in the alleged incidents. Because "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation," Plaintiff's claim fails. LaMarca, 995 F.2d at 1538. Thus, in the absence of an allegation of any connection between any actions of a named defendant with any alleged unconstitutional deprivation Plaintiff fails to state a claim for relief concerning the mace and handcuffing incidents against any named defendant. Douglas, 535 F.3d at 1222-23. Therefore, these claims should be dismissed.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants Winter, Henrey, Spires, and Owens, as well as Plaintiff's claims concerning the mace and handcuffing incidents, be **DISMISSED** from the case.[6]

SO REPORTED and RECOMMENDED this 30th day of November, 2009, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[6]By separate Order, the Court has directed that service of process be effected on Defendant Burnette based on Plaintiff's First and Eighth Amendment claims.

9