IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| ADRAIN SHELTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 309-048 |
| | ) |
| FRED BURNETTE, | ) |
| | ) |
| Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate formerly incarcerated at Telfair State Prison ("TSP") located in Helena, Georgia, commenced the above-captioned action pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The matter is presently before the Court on Defendant's "Pre-Answer Motion to Dismiss." (Doc. no. 17). Plaintiff did not respond to Defendant's motion to dismiss, and therefore, under Loc. R. 7.5, the motion is deemed unopposed.[1] For the reasons set forth below, the Court **REPORTS** and

---

[1] In light of the recent Eleventh Circuit opinion, Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 129 S. Ct. 733 (2008), by Order dated March 4, 2010, the Court directed Plaintiff to file his opposition to Defendant's motion to dismiss, with appropriate supporting affidavits or other documentary evidence. (Doc. no. 19). Plaintiff failed to do so. Notably, the record reflects that the Court's March 4, 2010 Order was returned as undeliverable and the Georgia Department of Corrections website suggests that Plaintiff has been paroled. (See www.dcor.state.ga.us/GDC/OffenderQuery/jsp/OffQryredirector.jsp). The Court has specifically warned Plaintiff, "While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case." (Doc. no. 14, p. 9).

**RECOMMENDS** that Defendant's motion to dismiss be **GRANTED**, that Plaintiff's complaint be **DISMISSED** without prejudice, and that the case be **CLOSED**.

## I. BACKGROUND

The Court allowed Plaintiff to proceed with his First and Eighth Amendment claims against Defendant.[2] (See generally doc. no. 1). According to Plaintiff, on February 6, 2009, he and inmate Jimmy Soloman ("Soloman") were taken to Defendant Burnette's office. (Id. at 5). While there, Plaintiff claimed that Defendant Burnette questioned Soloman about why he had written a letter to his mother alleging that he had been beaten by an officer at TSP. (Id.). Plaintiff also claimed that Defendant Burnette then questioned him about why he had written to Soloman's mother alleging that Soloman had been beaten by an officer at TSP. (Id.). Plaintiff stated that he did so because "it was true;" he had heard an officer beating Soloman on the walk-way in front of his window. (Id.). Plaintiff alleged that after he made this statement, Defendant Burnette directed the officers to leave and to take Soloman with them. (Id.). Plaintiff maintained that once everyone had left Defendant Burnette's office, Defendant Burnette made some comments to Plaintiff while taking a walking cane and "push[ing] it into [Plaintiff's genitals] twice slow[ly] and very hard." (Id.). At that point, Plaintiff "ran" out of Defendant Burnette's office to where the officers were waiting; he stated he had tears in his eyes, was scared, and was in shock. (Id.).

---

[2]Plaintiff's complaint also raised claims concerning a handcuffing incident, as well as named Defendants Winter, Henrey, Spires, and Owens. (Doc. no. 1). That claim and those Defendants have been dismissed. (Doc. no. 16). Accordingly, for purposes of Defendant's motion to dismiss, the Court will only address the facts pertinent to Plaintiff's remaining claims.

2

Plaintiff provided that the next morning, he told Mrs. Wilcox, a counselor at TSP, about the incident and asked for a "grievance." (Id.). According to Plaintiff, he was provided the grievance form ten (10) days later. (Id.). On the date that he returned the completed form to Ms. Wilcox, February 16, 2009, the CERT-Team went to his cell and informed Plaintiff that Defendant Burnette wanted to see him. (Id.). Plaintiff maintained that when he replied that he was scared, the CERT-Team left. (Id.). However, approximately five (5) minutes later, the CERT-Team returned, opened the "flap," and sprayed mace through the flap. (Id.). Plaintiff alleged that the mace affected his eyes. (Id.).

Approximately fifteen (15) minutes later, the CERT-Team again returned, and forcibly removed Plaintiff from his cell. (Id.). Although not clearly stated, Plaintiff apparently had a disciplinary proceeding based on one of the above-noted incidents and he was found guilty for failure to follow directions. (Id.). Plaintiff stated that one week after the incidents, as a result of the disciplinary report, his security classification was raised from medium to close level. (Id.). He maintains that he was then transferred from TSP. Plaintiff requested fifty million dollars in damages. (Id. at 8). The Court allowed Plaintiff to proceed with his claims that Defendant violated his First and Eighth Amendment rights.

Defendant now seeks to dismiss Plaintiff's complaint for Plaintiff's failure to exhaust his administrative remedies. (See generally doc. no. 17). As noted above, Plaintiff failed to oppose Defendant's motion.

## II. DISCUSSION

### A. Applicable Legal Standard for Exhaustion

Where a defendant has filed a motion to dismiss based on failure to exhaust

administrative remedies, as Defendant has here, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> . . . .
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues. . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings, the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 129 S. Ct. 733 (2008)). Where exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

### B. The Administrative Grievance Process

Within the Georgia Department of Corrections, the administrative grievance process is governed by SOP IIB05-0001. Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate

has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within 10 calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has 5 business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

### C. Failure to Exhaust Administrative Remedies

As noted above, the Court allowed Plaintiff to proceed against Defendant with his claims of undue force and retaliation. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act 's ("PLRA") mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 92 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90-91 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. App'x 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). Under the PLRA, the Court has no

discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Following the Burnside test set forth *supra*, the Court first looks to Defendant's factual allegations. See Burnside, 541 F.3d at 1082-83. Defendant contends that Plaintiff failed to exhaust administrative remedies concerning both of his claims. (Doc. no. 17, pp. 6-7). Defendant states that Plaintiff filed two grievances concerning the claims he raised in this case. (Id. at 6). The grievance Plaintiff filed on March 2, 2009 addressed Plaintiff's claim that Defendant struck him with the walking cane. (Id.). However, Defendant maintains that Plaintiff did not complete the grievance process concerning this issue. (Id. at 6, 7). Defendant also states that Plaintiff filed a second grievance on March 12, 2009, in which he complained of Defendant's actions and provided that the actions were retaliatory. (Id. at 7). Notably, however, Plaintiff did not complete the grievance process until after he had commenced this case. (Id.).

Here, the evidence supports Defendant's arguments. While incarcerated at TSP in 2009, Plaintiff filed two formal grievances. (Doc. no. 17, Winter Aff. ¶ 14 and Exs. B, C). On March 2, 2009, Plaintiff filed formal grievance 7404, wherein he alleged that on February 6, 2009, Defendant struck him with a walking cane. (Id. at Winter Aff. ¶ 15). On March 10, 2009, Ms. Winter, the grievance coordinator at TSP, advised Plaintiff in writing that formal grievance 7404 could not be processed because it did not comply with the requirements of

SOP IIB05-0001. (Id. at Winter Aff. ¶ 15 and Ex. C). In particular, Ms. Winter noted that formal grievance 7404 was not signed and it had more than one attachment. (Id. at Winter Aff. ¶ 15 and Ex. C). Formal grievance 7404 was administratively closed on March 10, 2009. (Id. at Winter Aff. ¶ 15 and Exs. B, C). As Plaintiff did not submit a formal grievance that complied with the requirements of SOP IIB05-0001, Plaintiff did not complete the grievance procedure. Indeed, in order to properly exhaust his claims, Plaintiff must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Woodford, 548 U.S. at 90-91 (internal quotation omitted). Therefore, as Plaintiff failed to complete the administrative process concerning formal grievance 7404, he failed to comply with the procedural rules governing prisoner grievances.

Plaintiff filed his second formal grievance on March 12, 2009, formal grievance 8067, wherein he complained that Defendant had used excessive force on him and that the force was retaliatory. (Id. at Winter Aff. ¶ 16, and Ex. D). Notably, the administrative procedures for formal grievance 8067 were not completed until July 1, 2009, approximately three months after Plaintiff had commenced this case in April 2009. As exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the administrative process *before* initiating this suit.

As such, the record reflects that Plaintiff failed to properly exhaust his administrative procedure concerning the claims he raised against Defendant. Therefore, Defendant's motion to dismiss should be **GRANTED**.

## III. CONCLUSION

Accordingly, for the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss (doc. no. 17) be **GRANTED**, that Plaintiff's complaint be **DISMISSED** without prejudice, and that the case be **CLOSED**.

SO REPORTED and RECOMMENDED this 21st day of April, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE